**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Collen M. Auer, | ) | |
| | ) | **ORDER GRANTING IN PART AND** |
| Plaintiff, | ) | **DENYING IN PART DEFENDANT'S** |
| | ) | **FIRST MOTION TO COMPEL** |
| vs. | ) | **DISCOVERY** |
| | ) | |
| City of Minot, a North Dakota Municipal | ) | Case No. 4:15-cv-00040-DLH-CSM |
| Corporation, | ) | |
| | ) | |
| Defendant, | ) | |

Plaintiff is suing defendant over her termination from employment as Minot City Attorney. According to the First Amended Complaint, plaintiff began her employment as City Attorney on March 31, 2014, and was terminated on May 2, 2014.

Before the court now is defendant's First Motion to Compel Discovery. The motion contains two requests for relief. The first is that plaintiff be required to execute authorizations that would allow defendant to obtain plaintiff's medical records, both mental and general, from her health care providers subject to some limitations   The second is that plaintiff be compelled to supplement her Rule 26(a)(1) disclosures as to documents in her possession.  (Doc. No. 33).

## I.   MOTION TO COMPEL SIGNED AUTHORIZATIONS FOR PLAINTIFF'S HEALTH CARE RECORDS RELEVANT TO HER CLAIM OF MENTAL DISTRESS

### A.   The discovery requests at issue

Defendant submitted to plaintiff the following request for production of documents:

> REQUEST NO. 1:     Please sign and return the attached *Authorization for Release of Information* to obtain you mental health records as referred to in your answers to the preceding interrogatories.

(Doc. No. 35-2, p. 8) (italics in original).  This, in turn, brings into play the following interrogatory:

INTERROGATORY NO. 10: List the name and address of **each** counselor, psychologist, psychiatrist, therapist, and/or other mental health professional seen and/or visited by you at any time for any reason during twenty (20) years prior to your employment with the City and for all time periods after your employment with the City terminated.

(Doc. No. 35-2, p. 7) (emphasis in original). Although Request No. 1 and Interrogatory No. 10 reference only plaintiff's mental health records, the form authorization that defendant demanded plaintiff execute was not so limited in that it authorized the release of all of plaintiff's medical records, including radiological and imaging films and reports, lab reports, pharmacy records, and any other records showing medical treatment or information. Further, the authorization stated that it is for records for medical care provided "at any time" and "without limitation as to type." (Id., p. 12).

Plaintiff objected to these discovery requests on several grounds. She contended that her mental health records are subject to the psychotherapy-patient privilege and that she has not waived the privilege by seeking damages for emotional loss because she has limited her claims to "garden variety" emotional distress that most persons would experience as a result of being terminated from employment under similar circumstances. She also objected to the overbreadth of the release she was expected to execute. Finally, she objected to Interrogatory No. 10 on the grounds that, by the time you count all of the subparts of her prior interrogatory answers, the limit of 25 interrogatories per side had been exceeded.

Following the undersigned's informal telephone conference with the parties, defendant has both narrowed and expanded upon what it wants in the present motion. Defendant now limits its demand for mental health records to those going back to January 1, 2005, which is just over nine years prior to plaintiff commencing work with defendant. In addition, however, defendant wants plaintiff's other medical records beginning on January 1, 2013, even though Document Request No.

1 and Interrogatory No. 10 initially referenced only mental health records, save, perhaps, for the accompanying authorization that would have allowed defendant to collect anything. Defendant's argument for why it now needs plaintiff's general medical records beginning on January 1, 2013, is that they might contain information relevant to whether plaintiff will still be with us and fully capable of working during the several years going forward for which she is claiming front pay. Also, there has been the suggestion that her general records might reference treatment for mental distress such as by her primary-care physician, for example.

More specifically, defendant now requests that plaintiff be required to execute two authorizations for health records. The first is for records relating to the "diagnoses or treatment for any mental, emotional, and psychological issue and any physical manifestations thereof" from January 1, 2005 to the present, including chemical dependency records. The second is an authorization for all of plaintiff's medical records, both general and mental health, including chemical dependency records, from January 1, 2013, to the present.

### B.      The Supreme Court's decision in <u>Jaffe</u>

While there is no recognized physician-patient privilege under federal law,[1] the United States Supreme Court did adopt a psychotherapist-patient privilege for confidential communications made to licensed psychiatrists, psychologists, and social workers in <u>Jaffee v. Redmond</u>, 518 U.S. 1 (1996). In <u>Jaffee,</u> the administrator of an estate of an individual shot and killed by a police officer sued the officer for the use of excessive force pursuant to 42 U.S.C. § 1983. At issue in <u>Jaffe</u> was whether the officer was required to disclose confidential statements he may have made about the shooting

---

[1] <u>Northwestern Memorial Hosp. v. Ashcroft</u>, 362 F.3d 923, 926 (7th Cir. 2004); <u>Heilman v. Waldron</u>, 287 F.R.D. 467, 472-73 (D. Minn. 2012); <u>see</u> <u>Whalen v. Roe</u>, 429 U.S. 589, 602 n.28 (1977).

to a licensed clinical social worker during the course of grief counseling following the shooting.

In addressing that question, the Court in <u>Jaffee</u> discussed the importance of the promise of confidentiality for effective psychotherapy, stating:

> Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

<u>Id.</u> at 10. The Court then discussed the importance of mental health to society, the need for effective mental health treatment, and the recognized importance of psychotherapy as a form of treatment and concluded that:

> [I]f the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation.

<u>Id.</u> at 11-12.

Also, for many of the same reasons, the Court rejected the conclusion of the court of appeals below that the privilege should be subject to a balancing of the interests of the person seeking mental health treatment against the need for the information by a litigant in a particular case. The Court stated:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.

Id. at 17. Finally, while the Court concluded that the privilege should be absolute and not subject to balancing, it did state in a footnote that, like other testimonial privileges, the psychotherapist-patient privilege could be waived. <u>Id.</u> at 15 n.4.

**C.**     **The three main approaches to the discovery of mental health records in federal civil rights cases where a claim of mental and emotional distress is being made**

**1.**     **Introduction**

There is considerable disagreement among the lower federal courts over the extent to which a defendant in a civil rights case is entitled to obtain and use a plaintiff's mental health records to defend against claims for damages for emotional distress.  In most of the decided cases, the question has arisen at the discovery stage when a defendant seeks to obtain plaintiff's mental health records.

For many of the courts, the question is simply whether or not the <u>Jaffee</u> privilege has been waived with the disagreement among the courts being what it takes to waive the privilege.  For some courts, however, relevancy and balancing come into play, particularly when a plaintiff seeks to avoid disclosure of mental health records by claiming only limited kinds or degrees of emotional distress.  Finally, an issue less discussed in the cases is the scope of <u>Jaffee</u> in terms of whether it protects  only communications by the patient to the psychotherapist or whether it also protects communications by the psychotherapist to the patient, including any diagnoses or statement of the severity of the symptoms and treatment notes, so long as they do not reflect or tend to reveal the statements made by the patient.  <u>See</u>, <u>e.g.</u>, <u>Doe I v. Mulcahy</u>, No. cv-08-306, 2008 WL 4572515, at *5 (D. Minn. Oct. 14, 2008) (noting the issue).[2]  One reason for the latter probably has to do with the fact that, in many of the cases, the issue arises out of a demand that a plaintiff execute an authorization for mental health records or a third-party subpoena to a mental health care provider, both of which typically

---

[2]  Some courts have looked to the attorney-client privilege as providing an appropriate analog to resolve issues over the scope and waiver of the <u>Jaffee</u> privilege.  But, even for the attorney-client privilege, there is a disagreement among the lower federal courts with respect to its scope.  For example, some courts limit the privilege to confidential communications made by a client in seeking legal advice from an attorney and communications that would reveal what the client's communications were while other courts construe the privilege more broadly to include all confidential communications between an attorney and the client no matter who initiated them and regardless of whether they would tend to disclose the client's confidential communications.  <u>See</u>, <u>e.g.</u>, <u>North Dakota v. United States</u>, 64 F.Supp.3d 1314, 1333-35 (D.N.D. 2014) (noting the differing approaches).

would give the party seeking the information access to everything, including confidential statements made by a plaintiff to the psychotherapist, which lie at the core of <u>Jaffee</u>.

Generally speaking, the lower federal courts have followed one of three approaches to the question of whether mental health records are discoverable when a civil rights plaintiff makes a claim for mental or emotional distress. These approaches, which will be discussed in turn, have variously been referred to the narrow, broad, and middle-of-the-road or intermediate approaches. <u>See</u>, <u>e.g.</u>, <u>Koch v. Cox</u>, 489 F.3d 384, 390 (D.C. Cir. 2007) (discussing the three approaches); <u>Miles v. Century 21 Real Estate, LLC</u>, No. 4:05-cv-1088, 2006 WL 2711534, at **4-5 (E.D. Ark. Sept. 21, 2006) (same); <u>see generally</u>, <u>Petition for Writ of Certiorari filed with the United States Supreme Court in Doe v. Oberweis Dairy</u>, Doc. No. 06-735, 2006 WL 3415354 (Nov. 22, 2006) (discussing the approaches and citing numerous cases); Helen A. Anderson, <u>The Psychotherapist Privilege: Privacy and "Garden Variety" Emotional Distress</u>, 21 Geo. Mason L. Rev. 117, 128-39 (Fall 2013); Deirdre M. Smith, <u>An Uncertain Privilege - Implied Waiver and the Evisceration of the Psychotherapist-Patient Privilege in the Federal Courts</u>, 58 DePaul L. Rev. 79, 106-114 (Fall 2008).

## 2. The "narrow approach"

The narrow approach is that the <u>Jaffee</u> privilege is waived only if a plaintiff calls the psychotherapist to whom the communications were made to testify about plaintiff's mental state or plaintiff testifies about or otherwise reveals their contents. <u>See</u>, <u>e.g.</u>, <u>Fitzgerald v. Cassil</u>, 216 F.R.D. 632, 638-39 (N.D. Cal. 2003); <u>Vanderbilt v. Town of Chilmark</u>, 174 F.R.D. 225, 225–30 (D. Mass. 1997); <u>cf.</u> <u>Koch v. Cox</u>, 489 F.3d at 390. The cases concluding that a waiver must be limited to these instances focus on the absolute nature of the <u>Jaffee</u> privilege and compare it to the attorney-client privilege, which also is absolute and for which, in most instances, the privilege can only be waived, other than by voluntarily disclosing the contents of the confidential communication, by

6

calling the attorney to testify, relying upon the attorney's advice as a substantive defense, or making the attorney's advice an issue by suing the attorney for malpractice. Since simply raising an issue upon which legal advice has been given is not enough to waive the attorney-client privilege, those courts that follow the narrow approach to waiver of the Jaffee privilege conclude that merely bringing a claim for emotional distress is not enough by itself to waive the privilege. See id.

### 3. The "broad approach"

On the other end of the spectrum is the broad approach to waiver, which is that, anytime damages for emotional distress are claimed, a plaintiff is deemed to have waived the privilege by putting his or her mental state at issue regardless of whether plaintiff intends on calling the treating mental health professional to provide testimony or otherwise disclose the contents of the confidential communications. See, e.g., Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006); Sarko v. Penn-Del Directory, 170 F.R.D. 127, 130 (E.D. Pa. 1997). For the most part, the courts taking the broad approach draw an analogy to the historical antecedents of the protections afforded medical records for reasons of privacy, including those jurisdictions that have adopted a physician-patient privilege, and the fact these protections are generally deemed waived when a person puts his or her medical condition at issue. They also point to fairness concerns. See id.; see generally 58 DePaul L. Rev. at 114-21. For many of these courts, the only way for a plaintiff to avoid discovery of his or her mental health records is to forgo any claim for emotional distress.

### 4. The "intermediate approaches"

In between the narrower and broader approaches are cases that fall somewhere in between. In concluding that discovery and use of mental records is not allowed in these cases, the decision is sometimes grounded upon the conclusion that the Jaffee privilege has not been waived. In other cases, however, the question is more one of lack of relevancy of the mental health records to the

kinds of emotions for which damages are being claimed or the court has balanced the interests of the parties, particularly when the records are viewed as likely being of marginal relevance, and has not allowed discovery or later use of the records.

### a. Claiming "garden-variety" emotional distress

A number of courts have concluded that a civil rights plaintiff seeking recovery for emotional distress should not be deemed to have waived the <u>Jaffee</u> privilege if plaintiff is only seeking damages for "garden variety" emotional distress. These cases hold that, even if the broad approach to waiver generally applies, a plaintiff will not be deemed to have put his or her mental state at issue unless plaintiff does something more, such as offer evidence of treatment, claim emotional distress that is "severe" (*i.e.*, beyond what a person ordinarily would be expected to suffer given the alleged violation of rights), or claim a specific psychiatric injury or disorder. <u>See</u>, <u>e.g.</u>, <u>Miles v. Century 21 Real Estate, LLC</u>, 2006 WL 2711534, at *5; <u>Ruhlmann v. Ulster County Dept. of Social Services</u>, 194 F.R.D. 445, 448-51 (N.D.N.Y. 2000).

Other courts reach the same point by concluding that a patient's mental health records are not relevant for garden variety claims of emotional distress by relying all, or in part, upon the threshold for obtaining an adverse medical examination under Fed. R. Civ. P. 35(a) as providing an appropriate analog. <u>See</u>, <u>e.g.</u>, <u>Womack v. Wells Fargo Bank, N.A.</u>, 275 F.R.D. 571, 572-73 (D. Minn. 2011); <u>Jackson v. Chubb Corp.</u>, 193 F.R.D. 216, 219-228 & n.8. (D.N.J. 2000). Under prevailing Rule 35(a) case law, mere allegations of mental pain and anguish are insufficient to place a party's mental condition "in controversy" within the meaning of the Rule and an adverse medical examination is only permitted if one of the following is present:

1.  a cause of action for intentional or negligent infliction of emotional distress;

2.  an allegation of a specific mental or psychiatric injury or disorder;

3.      a claim of unusually severe emotional distress;

4.      plaintiff's offer of expert testimony to support a claim of emotional distress; and/or

5.      plaintiff's concession that her mental condition is "in controversy" within the meaning of Rule 35.

Houghton v. M & F Fishing, Inc., 198 F.R.D. 666, 668-69 (S.D. Cal. 2001); Ricks v. Abbott Labs., 198 F.R.D. 647, 648-49 (D. Md. 2001); O'Sullivan v. State of Minn., 176 F.R.D. 325, 327-28 (D. Minn. 1997); Smith v. J.I. Case Corp., 163 F.R.D. 229, 230-31 (E.D. Pa.1995). Those court that disagree with this approach contend there is nothing in the federal rules which reflects an intent that the "in controversy" requirement of Rule 35(a) applies to discovery other than for an adverse medical examination, and that discovery of medical records, including those pertaining to mental health, are governed by the "relevancy" standard of Fed. R. Civ. 26(b). See, e.g., Sandoval v. American Bldg. Maintenance Industries, Inc., No. 06-cv-1772, 2006 WL 6607858, at **3-4 (D. Minn. Sept. 21, 2006).

### b.      Claiming damages only for humiliation, embarrassment, anger, and hurt feelings

For some courts, the discovery of a plaintiff's mental health records is irrelevant if a plaintiff limits his or her claim to recovery for humiliation, embarrassment, anger, and hurt feelings. The leading case for this approach is Santelli v. Electromotive, 188 F.R.D. 306 (N.D. Ill. 1999), where the court concluded that plaintiff did not have to turn over her mental health records for this reason, but then severely limited what evidence plaintiff could present at trial. The court stated in part the following:

> In this case, however, Santelli has limited the scope of her emotional distress claim. As noted earlier, she represented to Judge Rosemond that her claim was limited to compensation for humiliation, embarrassment, and other similar emotions, and Judge Rosemond accordingly precluded her from introducing evidence about emotional distress

that necessitated care or treatment by a physician. Put another way, plaintiff's emotional distress claim has been limited to the negative emotions that she experienced essentially as the intrinsic result of the defendant's alleged conduct, while she has been barred from introducing evidence of any resulting symptoms or conditions that she might have suffered. See generally Seaton v. Sky Realty Co., 491 F.2d 634, 637–38 (7th Cir.1974) (holding that compensatory damages may be awarded for humiliation, either inferred from circumstances or established by testimony, and that medical evidence of mental or emotional impairment is not necessary to sustain such an award).

We conclude that as a result of plaintiff's self-imposed limitations, and those imposed by Judge Rosemond, plaintiff's claim has been narrowed to such an extent that she has successfully avoided waiver of her psychotherapist-patient privilege. In a sense, plaintiff's communications to her psychotherapist are no longer relevant, or if relevant are only barely so. She will be precluded at trial from introducing the fact or details of her treatment; she may not offer evidence through any witness about symptoms or conditions that she suffered (e.g., sleeplessness, nervousness, depression); and she will not be permitted to offer any evidence regarding a medical or psychological diagnosis. Rather, she will be permitted to testify only that she felt humiliated, embarrassed, angry or upset because of the alleged discrimination. While we believe that a party waives her psychotherapist-patient privilege by electing to inject into a case either the fact of her treatment or any symptoms or conditions that she may have experienced, Santelli is doing neither.

This may be a meager victory for Santelli. Bare testimony of humiliation or disgust may prevent her from fully recovering for her alleged emotional distress. She may be better off disclosing her psychological records, which would allow her to make a broader damage claim. The choice, however, is hers. She has made her choice, and as a result we conclude that defendant is not entitled to discover records of her treatment by psychotherapists, for those records remain privileged.

Id. at 309.

### D.     Case law in the Eighth Circuit

The Eighth Circuit clearly rejected the narrow approach to waiver of the Jaffee privilege in

Schoffstall v. Henderson, 223 F.3d 818 (8th Cir. 2000), an employment discrimination case, where

it concluded:

The Supreme Court has recognized the psychotherapist-patient privilege in federal question cases, see Jaffee v. Redmond, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), but has not addressed whether the privilege is waived by a plaintiff who places his or her medical condition at issue. Numerous courts since Jaffee have concluded that, similar to attorney-client privilege that can be waived when the client places the attorney's representation at issue, a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue. See Sarko v. Penn–Del Directory Co., 170 F.R.D. 127, 130 (E.D.Pa.1997); Vann v. Lone Star Steakhouse & Saloon, Inc., 967 F.Supp. 346, 349–50 (C.D.Ill.1997); EEOC v. Danka Indus., Inc., 990 F.Supp. 1138, 1142 (E.D.Mo.1997);

> Jackson v. Chubb Corp., 193 F.R.D. 216, 225 (D.N.J.2000); but see Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 225–30 (D.Mass.1997) (declining to find waiver where plaintiff sought emotional distress damages). Finding these cases persuasive, we agree that by placing her medical condition at issue, Schoffstall waived the psychotherapist-patient privilege.

Id. at 823. However, in Shoffstall, the court characterized plaintiff as claiming "extreme emotional distress" (id. at 822) and did not address whether an intermediate approach would be appropriate in cases when severe distress is not being claimed. Further, as pointed out by another district court in this Circuit, one of the four cases cited by the Eighth Circuit in the foregoing passage (Jackson v. Chubb. Co.) was a case where the court concluded that, although the broad approach to waiver of the Jaffee privilege applies, the plaintiff could avoid discovery if she limited her claim for damages to recovery for garden variety emotional distress. See Miles v. Century 21 Real Estate, LLC, 2006 WL 2711534, at *5.

Somewhat more recently, the Eighth Circuit concluded in the Title VII wrongful termination case of Atiste-Davis v. Lincare, Inc., 526 F.3d 377 (8th Cir. 2008) that the trial court had not erred by allowing evidence that plaintiff had been treated with electroconvulsive therapy for depression, citing Schoffstall. And, while the court again did not address the possibility of an intermediate approach, it concluded the plaintiff had placed her mental condition in issue when she had "planned and did call her treating social worker to testify that her termination from Lincare had impacted her psychologically." Id. at 381. Consequently, whether intentional or not, by pointing to this as the grounds for the waiver, the court avoided deciding whether simply bringing a claim for mental distress in a civil rights case is sufficient to open the door to discovery and use of a plaintiff's mental health records absent something more.

Within the Eighth Circuit, the federal district courts have taken differing positions with respect to whether one of the intermediate approaches can be taken in an appropriate case to

foreclose discovery and later use of a plaintiff's mental health records, including there being a divergence of opinion among the judges of the District of Minnesota.  Compare, e.g., Flores v. Tyson Foods, Inc., NO. 4:12-cv-3089, 2013 WL 1091044, at *4 (D. Neb. ) ("plaintiff does not place her physical or psychological condition at issue by asserting 'garden variety' claims for emotional distress damages"); Womack v. Wells Fargo Bank, N.A., 275 F.R.D. at 572-73 (D. Minn. 2011) (same); Miles v. Century 21 Real Estate, LLC, 2006 WL 2711534, at **4-5 (E.D. Ark. 2006) (same) with  Eggering v. MHP, Inc., No. 4:10-cv-01794, 2011 WL 6029956, at * 2 (E.D. Mo. Dec. 5, 2011) (rejecting argument that seeking recovery for only garden variety claims of emotional distress barred discovery but expressly reserving judgment as to whether the records could be used at trial; Sandoval v. American Bldg. Maintenance Industries, Inc., 267 F.R.D. 257, 267-269 (D. Minn. 2007) (discussing the conflicting decisions in the District of Minnesota with respect to whether seeking recovery for garden variety emotional distress is sufficient to put plaintiff's mental health at issue thereby entitling defendant to discovery of mental health records).[3]

### E.    The conclusions reached here

While the Eighth Circuit  in Schoffstall clearly rejected the narrow approach to the question of waiver of the Jaffee privilege, the undersigned concludes it would find persuasive *at least* the position taken by the federal district court in Santelli, *i.e.*,  a civil rights plaintiff's mental health records are either not relevant or of such marginal relevance that they should not be subject to discovery and later use if plaintiff: (1) limits his or her claim to recovery of damages for hurt feelings, humiliation, anger, and embarrassment; (2) does not offer evidence of treatment or of any

---

[3]  The undersigned did order production of plaintiff's mental health records in Wetzel v. Brown, No. 1:09-cv-053, 2014 WL 684693 (D.N.D. Feb. 21, 2014) after noting the authority dealing with garden-variety claims of emotional distress, but that case was unusual in that plaintiff's PSTD was likely to be an issue for why he acted as he did and he did not offer to limit his claims for emotional distress.

resulting physical manifestation; and (3) relies only upon his or her own testimony to support the claim.[4]

This conclusion is based upon the fact that hurt feelings, humiliation, anger, and embarrassment are things that most persons are likely to experience following an involuntary termination and jurors can readily evaluate the legitimacy of claims for damages for these emotions based on the examination and cross-examination of plaintiff, the circumstances surrounding the termination, and their common experience. Also, given the likelihood of an involuntarily terminated person experiencing these emotions and these emotions being qualitatively different from other kinds of emotional distress, it would amount to nothing more than rank speculation for a jury to conclude that some other mental issue or stressor was also a substantial cause and, even if possibly so, that the damages are somehow *fairly divisible*. Cf. Jenson v. Eveleth Taconite, Co., 130 F.3d 1287, 1294-95 (8th Cir. 1997) (once a plaintiff has shown that an act of discrimination is a substantial factor in causing emotional harm, the burden is on defendant to show that the damages are divisible and that outside factors contributed to them).

Here, no amount of highly-invasive discovery of plaintiff's mental health records is going to change this calculus. Consequently, if plaintiff is willing to limit her emotional loss claims to those set forth above and live with the constraints imposed by Santelli (including not calling third

---

[4] While the court in Santelli did not provide an explanation for why it would limit plaintiff to only his or her testimony to support the limited claim for recovery for emotional suffering, it appears to have been grounded primarily upon the marginal relevance of the evidence and a balancing of interests. From plaintiff's standpoint, the need for corroborative evidence is substantially less when all plaintiff is claiming are emotional feelings that jurors expect are likely to result from an involuntary termination. From defendant's standpoint, the limitation alleviates the concern that a parade of witnesses testifying about what they observed could result in the jury concluding the degree of emotional distress suffered was more substantial than what plaintiff would be permitted to present absent defendant having the ability to try and prove some other cause. Finally, there is a cost-savings in terms of the time and effort required to present third person corroborative testimony at trial and the probably even greater cost of the pretrial discovery over the third-person testimony.

persons to testify about her emotional losses), the court is prepared at this point to foreclose any discovery of her mental health records.

The undersigned also believes, however, that the same reasoning would support a plaintiff also being able to present testimony of having experienced *short term* feelings of despondency as well as *minor* and *short term* physical effects, such as temporary inability to sleep, focus, etc.  See, e.g., Greenberg v. Smolka, No. 03-cv-8572, 2006 WL 116521, at **10-11 (S.D.N.Y. April 27, 2006).  These emotions and effects are also likely to be experienced by persons who are involuntarily terminated and trying to sort out what is attributable to the termination and what might be attributable to other causes and fairly allocate any damages simply involves too much speculation.  Also a balancing of the interests favors a plaintiff not having to undergo a highly invasive examination of her mental health records if the claim for emotional loss is confined to this extent.  In other words, this comes close to, but, perhaps, is slightly more restrictive than, the decisions of those courts holding that making a claim for garden variety mental distress does not open the door to discovery of mental health records.

The undersigned is not convinced, however, that the Eighth Circuit would go this far.  And, if plaintiff is not willing to live with the Santelli constraints, then the court is going to defer making any final decision about what will be turned over to defendant by implementing the procedure described below whereby plaintiff will collect mental health records as ordered by the court and, if after collection, she still wishes to contest the records being turned over, she can ask for the court to consider them *in camera*.  By proceeding in this manner, it may be that the court can avoid making any sweeping decisions that increase the probability for reversal upon appeal.  For it may be that after plaintiff collects the records, she will simply decide to turn them over to defendant because she is comfortable with the constraints that will be imposed by the court.  But, even if she

does not, it may be that an *camera* inspection will reveal that there is nothing in the records that would substantially benefit defendant in contesting plaintiff's claims for damages for emotional loss and that a more particularized balancing of the factors set forth in Rule 26(b) after a review of the actual content of the records would broker for the material not being turned over.

Before turning to what will be ordered now, it important to note that, even if the governing rule is that a civil rights plaintiff who makes only claims for damages for garden variety emotional distress places his or her mental state at issue and thereby opens the door to discovery of mental health records, that does not mean that all of a plaintiff's mental health records will be admissible at trial or even that they all necessarily have to be turned over to defendant during discovery. That is, the court can take make measures to mitigate the impact of a victim of an alleged violation of civil rights being subjected to a highly-invasive examination or later use of that person's mental health records. For example, unless there is a more direct waiver of the Jaffee privilege by plaintiff calling the psychotherapist to testify or plaintiff testifying to the contents of his or her communications, the court can review the evidence and prohibit or limit the use of a plaintiff's statements made during counseling sessions, which lie at the core of Jaffee, and confine defendants to use of evidence that more generally addresses the emotional distress plaintiff is claiming to such things as the fact treatment was sought, what the treatment was for, it frequency, and, perhaps, any statements and diagnoses by the medical health professional that describe the distress and its severity. See, e.g., In re Sealed Case (Medical Records), 381 F.3d 1205, 1215-18 (D.C. Cir. 2004); Doe I v. Mulchay, Inc., 2008 WL 4572515, at **5-6; Greenberg v. Smolka, 2006 WL 116521, at 10-11.[5] Further, the court can protect the information from public dissemination, except what is

---

[5] In the case of In re Sealed Case (Medical Records), supra, the D.C. Circuit, in an opinion authored by Judge Garland, was highly critical of the district court's order directing the District of Columbia to turn overall of defendant's

used in open court at trial, through the use of protective orders and/or the court limiting what is turned over after an *in camera* review to only the information that is fairly needed by a defendant after balancing the interests of the parties. Id.

**F.** **Defendant's motion to compel discovery of records relevant to her claims of emotional distress**

In this case, plaintiff has not presented an affidavit stating what she will be claiming for emotional distress nor has any deposition testimony been offered, possibly because her deposition may not have yet been taken. However, it does appear from plaintiff's Rule 26(a) disclosures that she intends on calling several persons to testify about what they observed in terms of her emotional distress.

So long as plaintiff does not intend to limit the emotional component of her claim for damages to the strict confines of Santelli (which includes not calling third persons to testify about what they perceived to be her emotional state), the court will **GRANT IN PART** defendant's motion to compel production of records relevant to her claim of mental distress, but only as follows:

1. Plaintiff shall within twenty days of the date of this order identify in response to Defendant's Interrogatory No. 10 any health care professional (whether in the field of providing mental health care specifically or health care more generally) from whom plaintiff currently is seeking or has sought advice, care, or treatment for any mental conditional or emotional distress, as well as physical manifestations of such

---

medical records, including mental health records, to plaintiff's attorney before the court had the opportunity to consider any arguments of privilege or privacy with respect to individual records. 381 F.3d at 1215- 18. Judge Garland stated that "the scope of this intrusion into the appellant's privacy is breathtaking." Id. at 1271. The district court was ordered to employ other methods to first screen the documents in light of any claims of privilege and privacy, including consideration of the methods the court is employing here. Id. at 1218.

distress, dating back to four years preceding plaintiff's termination.[6]

2.     Plaintiff shall within the same twenty days forward a request for records to each health care provider identified in response to Interrogatory No. 10, as limited above, for their records relating to these matters.

3.     After plaintiff receives the records, she will promptly turn the records over to defense counsel unless she intends to contest all, or in part, the turnover of the records. For any records turned over, they will be subject only to viewing by the attorneys for defendant (*i.e.* "attorney's-eyes-only" protection) unless further ordered by the court, except that they may used during any deposition of plaintiff, but subject thereafter to the same protection if made exhibits, and so long as the only persons in the room during the time period the records are used during the deposition are plaintiff, the attorneys, and the court reporter.

4.     If plaintiff contends the records all or in part should not be turned over, she should file a motion seeking a protective order and submit the records to the court for an *in camera* review.[7]

If plaintiff fails to comply with these discovery demands, she will be deemed to have waived her

---

[6] See, e.g., Lewis v. Temp-Air, Inc., No. 4:14-CV-398, 2014 WL 5432122, *2 (E.D. Mo. Oct. 27, 2014) (limiting the discovery of mental health records to three years prior to plaintiff's termination by defendant); Bujnicki v. Am. Paving & Excavating, Inc., No. 99-cv-0646S, 2004 WL 1071736, at *19 (W.D.N.Y. Feb. 25, 2004) (permitting discovery of mental and other health records but only back to two years prior to the commencement of plaintiff's employment with defendants); Garrett v. Sprint PCS, No. 00-2583, 2002 WL 181364, at *3 (D. Kan. Jan. 31, 2002) (limiting defendant's request for medical and psychological records to beginning three years prior to when the discriminatory conduct was alleged to have occurred); McKenna v. Cruz, No. 98-cv-1853, 1998 WL 809533, at *3 (S.D.N.Y. Nov. 19, 1998) (limiting discovery of plaintiff's mental health records to five years prior to the alleged use of excessive force).

[7] In making a decision to do this, however, plaintiff needs to weigh the risk of the court making a wrong determination and subjecting her case to reversal, if she prevails on the merits and it was determined the error was harmful, against what she perceives to be the harmful impact of any disclosure.

right to seek recovery for emotional distress beyond what the court indicated would be permitted by Santelli, including the constraints imposed upon the evidence she will be permitted to present in support of these limited claims.

## II. MOTION TO COMPEL SIGNED AUTHORIZATIONS FOR PLAINTIFF'S OTHER MEDICAL RECORDS

Defendant demands that plaintiff execute releases that would provide access to all of plaintiff's medical records beginning on January 1, 2013, claiming that her health is relevant to her ability to work during the time she is claiming front pay. This request is **DENIED**. The court will permit defendant to ask plaintiff during her deposition whether she has been diagnosed with, or is currently being treated for, any life-threatening or other medical condition that would impact her ability to work during the time she is claiming front pay. If she responds in the negative to these questions, there is no reason to allow defendant to go on a fishing expedition through all of plaintiff's private medical records. If plaintiff responds in the positive, defendant can follow up with additional questions directed specifically to the physical condition, diagnosis, and/or treatment identified. And, at that point, the court may entertain a motion to compel a more limited request for records in terms of both time and scope if the parties are unable to then agree upon any further discovery. See, e.g., Holter v. Wells Fargo and Co., 281 F.R.D. 340, 343 (D. Minn. 2011) (defendant not entitled to discovery of plaintiff's general health records when the only claimed impairments were anxiety and depression); Sandoval v. American Building Maintenance Industries, Inc., 267 F.R.D. 257, 265-70 (D. Minn. 2007) (limiting defendant's access to plaintiff's health records in a case alleging sexual harassment, discrimination, and retaliation under federal and state law to records relating to plaintiff's mental health and any claimed physical manifestations resulting from alleged mental and emotional distress); E.E.O.C. v. Woodmen of World Life Ins. Soc., No.

18

8:03cv165, 2007 WL 649298, at *3 ( D. Neb. Feb. 1, 2007) (concluding in an action for gender discrimination, sexual harassment, hostile work environment, and retaliation that defendant was not entitled to discover the claimant's gynecological records); <u>Manessis v. New York City Dept. of Transp.</u>, No. 02 CIV. 359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002) (concluding in a Title VII claim of discrimination and retaliation that making an emotional distress claim did not open the door to allow defendants "an unfettered right to pursue discovery into [the plaintiff's] entire medical history.") (citing other cases).

## III. DEFENDANT'S MOTION TO COMPEL SUPPLEMENTAL RULE 26(a)(1(A) DOCUMENT DISCLOSURES

Before proceeding to address defendant's claims of inadequacy with respect to plaintiff's initial Rule 26(a)(1)(A) disclosures, it is helpful first to focus upon what the Rule actually requires. As it pertains to documents, Rule 26(a)(1)(A) reads as follows:

> (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Generally speaking, plaintiff made more than a perfunctory effort to comply with the Rule 26(a)(1)(A) disclosure requirements. (Doc. No. 35-1). For example, she provided a long list of persons that might have discoverable information and, for each, gave a detailed explanation of what discoverable information the person was likely to have. (<u>Id.</u>) Similarly, when it came to the damages disclosure, she provided a detailed list of the particular relief and types of damages she is seeking, albeit deferring for supplementation the actual calculation of each particular item of damages. (<u>Id.</u>).

When it came to the listing of documents that she might use to support her claim, however, it appears plaintiff simply misread the Rule's requirements. Rather, than providing a copy or listing

by category or location of the documents *in her possession*, she appears to have listed instead all documents that she concluded might be used by her, whether in her possession or not, and then listed where those documents could be found. For example, plaintiff provided a detailed list of categories of documents that pertained to matters that arose while she was City Attorney (*e.g.*, correspondence relating to a men's shelter) and then gave as the location for each category of these kinds documents the "City." Similarly, she listed as a category of documents generated as a result of her administrative complaints to the North Dakota Department of Labor and EEOC and stated for the location of these categories of documents the "ND. Dept. of Labor File" and the "EEOC." Only in two instances did she list the location of the documents as being herself, one was for correspondence related to her reciprocal admission and temporary license to practice law in North Dakota and the other was for her "right to sue" letter.

In proceeding in this manner, plaintiff exceeded the Rule 26(a)(1)(A) requirements to the extent she identified documents she thought she might use to support her claims that were not then in her possession. On the other hand, unless she possessed only the two categories of documents for which she identified the location as being herself, which appears to be improbable, her disclosure did not comply with the Rule's requirements.

In its brief in support of the motion to compel, defendant points to the inability to determine from plaintiff's Rule 26(a)(1)(A) disclosures what documents she has her in possession. Further, defendant contends that the categories of documents identified were too general. To address the purported deficiencies, defendant asks the court to require that plaintiff provide it with numbered copies of her documents, contending it went to great lengths to list its documents, stamp them with numbers, and provide plaintiff with electronic copies. In the alternative, defendant demands what amounts to a virtual listing of each individual document in her possession.

Since this motion was filed, plaintiff contends in her response to a second motion to compel that was filed by defendant (which, in part, complained about alleged deficiencies in her responses to defendant's Rule 34 requests for production of documents) that she produced 423 pages of responsive documents. Whether these documents encompass the totality of the ones identified in her Rule 26(a)(1)(A) disclosure either specifically or being within one of the identified categories, the court cannot now determine.

The court certainly encourages parties to talk prior to document discovery and agree upon a system of producing and marking documents. Further, it is probably within the court's power in appropriate cases to order that a particular method be followed to lessen the probability of future discovery disputes. The court is not inclined to do so in this case, however. Here, defendant is represented by an experienced litigation firm that has the manpower and equipment to handle document discovery in the manner it is claiming plaintiff should be required to do. Plaintiff, while an attorney, is on her own and may not have all of the same resources. Consequently, the court will stick with what Rule 26(a)(1)(A)(ii) by default requires.

Under Rule 26(a)(1)(A)(ii), plaintiff was not required to identify every document individually, much less mark and provide defendant with electronic copies. She only had to identify categories of documents and their location in her written disclosure. And, while defendant contends the categories of documents were too broad, the court disagrees. By the court's count, plaintiff identified approximately 65 separate documents or categories of documents, with most being the latter, in a listing that went for almost five pages. The court has reviewed the identified categories and concludes they are sufficiently specific for this case.[8]

---

[8] One of the categories of documents that plaintiff listed (and really did not have to) was "city codes" and the fact that these were in the possession of the City. Defendant contends it will be at loss to know what city code provisions

That being said, the court will require plaintiff to identify those documents or categories of documents that are in her possession. For example, if for a particular category (such as the EEOC administrative claim documents where she had identified the location as the "EEOC") she can add "Auer" to the extent she possesses some of the documents. In forcing plaintiff to do this, the court recognizes that, to some extent, this might amount to "make work" now given her 423-page document disclosure and the fact the court seriously doubts defendant will truly be surprised by anything she might possess. That being said, the obligation to identify documents, either specifically or by category, is not a onetime obligation. Rather, there is an continuing obligation to supplement the Rule 26(a)(1)(A) disclosures and the only way of practically monitoring whether the supplementation is adequate is to start with a proper disclosure - at least when the parties are intent on fighting about these things, as appears to be the case here. Consequently, the court will compel plaintiff to update her Rule 26(a)(1)(A) disclosure as it relates to documents in her possession.

## IV.   ORDER

Defendant's First Motion to Compel Discovery (Doc. No. 33) is **GRANTED IN PART AND DENIED IN PART** in accordance with the foregoing.

   **IT IS SO ORDERED.**

Dated this 11th day of April, 2016.

                                   */s/ Charles S. Miller, Jr.*
                                   Charles S. Miller, Jr., Magistrate Judge
                                   United States District Court

---

plaintiff deems are relevant unless she discloses with particularity in her Rule 26(a)(1)(A) disclosure each code provision she intends to rely upon. Before the court would address this *purported* deficiency, it would want to review defendant's Rule 26 disclosure to see if it included the city code provisions it has in its possession and that it intends to rely upon, as well as, for that matter, any copies of relevant provisions of the North Dakota Century Code in its possession and that it intends to rely upon.